IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

MARY WESLEY,                                                                    MOVANT

v.                                                         No.: 4:09CR49-SA

UNITED STATES OF AMERICA,                                              RESPONDENT

**MEMORANDUM OPINION AND ORDER**

Mary Wesley is a federal prisoner who is proceeding pro se on a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. The Government has submitted a response to the motion, and the Wesley has submitted a rebuttal thereto. This matter is ripe for review. Having considered the pleadings and the record, including the relevant parts of Wesley's underlying criminal case, along with the relevant law, the Court finds that an evidentiary hearing is unnecessary[1], and that the motion should be denied.

**Background Facts and Procedural History**

Mary Wesley was charged in an eleven-count superseding indictment alleging that she and other co-conspirators conspired to and did prepare and submit fraudulent tax returns in violation of 18 U.S.C. § 371 and 26 U.S.C. § 7206(2). Wesley proceeded to trial on May 23, 2011, where she was convicted on Counts 1, 8, 9, 10, and 11 and acquitted on Counts 2, 3, 4, 5,

---

[1] An evidentiary hearing is required on a § 2255 motion unless the motion, files, and record conclusively show that the prisoner is not entitled to relief. *See* 28 U.S.C. § 2255(b); *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992). It is the prisoner's ultimate burden, however, to sustain his claims by a preponderance of the evidence. *United States v. Bondurant*, 689 F.2d 1246, 1251 (5th Cir. 1982). Accordingly, if there is no "independent indicia of the likely merit" of the allegations made in the motion, a hearing is not required. *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (citation omitted).

6, and 7. On December 20, 2011, Wesley was sentenced to a term of incarceration of 120 months (twenty-four months on each count), and she was ordered to pay restitution in the amount of $ 5,570,945. Wesley appealed her conviction to the Fifth Circuit, which affirmed the conviction and sentence in an order issued November 19, 2012. *United States v. Wesley,* 491 F. App'x 507, 2012 WL 5835257 (5th Cir. Nov. 19, 2012). On or about October 30, 2013, Wesley filed the instant motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, raising four grounds for relief, as paraphrased by the Court:

> Ground One: The Court improperly speculated as to the amount of loss.
> Ground Two: The charges in the indictment fall outside of the statute of limitations.
> Ground Three: Counsel rendered ineffective assistance in failing to object to her sentence since the Guideline range used by the Court included loss that occurred outside of the statute of limitations.
> Ground Four: The restitution ordered by the Court incorrectly considered loss that occurred outside the statute of limitations.

## Legal Standard

After a defendant has been convicted and exhausted his appeal rights, a court may presume that "he stands fairly and finally convicted." *United States v. Frady*, 456 U.S. 152, 164 (1982). A motion brought pursuant to § 2255 is a "means of collateral attack on a federal sentence." *Cox v. Warden, Federal Detention Ctr.*, 911 F.2d 1111, 1113 (5th Cir. 1990) (citation omitted). There are four separate grounds upon which a federal prisoner may move to vacate, set aside, or correct a sentence under § 2255: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255. Collateral attack limits a defendant's allegations to those of "constitutional or jurisdictional magnitude." *United States v. Samuels*, 59

2

F.3d 526, 528 (5th Cir. 1995) (citation omitted). Relief under § 2255 is reserved, therefore, for violations of "constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and, would, if condoned, result in a complete miscarriage of justice." *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981).

## Discussion

**Ground One**

In her first ground for relief, Wesley argues that this Court improperly speculated as to the proper amount of tax loss involved in the offense. As the Court understands her argument, Wesley maintains that the Court improperly speculated about the amount of attempted loss in the case by considering both proper and fraudulent returns in its calculations. Wesley contends that she prepared tax returns for a large group of people, and that she was only charged and convicted for submitting fraudulent returns for a small subset of individuals. Wesley argues that the Court erred by including a vast number of lawful tax returns in its calculation of intended loss, and that it erred in not determining whether the returns for which she was held accountable fell within the applicable statute of limitations. She also argues that she was ordered to pay restitution in an amount greater than was charged in the indictment, which violates federal law.

The Government claims that Wesley is barred from arguing this ground in her § 2255 motion, as the issue was raised and decided on direct appeal. The Fifth Circuit determined that Wesley's sentence was properly based on the intended loss, and that there was no abuse of discretion in the Court's calculation of the amount of restitution owed. (*See* ECF no. 245; *United States v. Wesley*, 491 F. App'x 507, 2012 WL 5835257 (5th Cir. Nov. 19, 2012)). Wesley argues, however, that the Fifth Circuit did not decide the issue she now presents, which is

3

whether her sentence was unreasonable based upon a calculation of tax losses that included some lawfully prepared returns and that included some returns that fell outside of the applicable statute of limitations. (Reply 4-5).

If the issues now complained of by Wesley were raised and reviewed on direct appeal, Wesley is precluded from raising the issue on collateral attack. *See, e.g., Moore v. United States*, 589 F.3d 439, 441 (5th Cir. 1979). If the issues were not raised, they may not now be considered in a § 2255 motion, as a challenge to the calculation of a sentence asserts a nonconstitutional error that could have been raised on direct appeal. *See United States v. Towe*, 26 F.3d 614, 616 (5th Cir. 1994).[2] Therefore, Wesley is precluded from raising the argument in the present motion, regardless of whether it was presented and decided by the Fifth Circuit, as these issues could have been raised on direct appeal.[3] Nevertheless, and out of an abundance of caution, the Court will address the merits of Wesley's claim.

A determination of tax loss considers the amount of loss intended, and a district court need only reasonably estimate the amount of loss based upon the available information. *United States v. Phelps*, 474 F.3d 680, 682 (5th Cir. 2007); *United States v. Edwards*, 303 F.3d 606, 645 (5th Cir. 2002). The pre-sentence investigation report ("PSR") in this case determined the amount of loss for relevant conduct purposes (i.e., the amount of attempted loss) to be

---

[2] Nonconstituional claims that were not presented on direct appeal may be asserted in a collateral proceeding only if the alleged error constituted a fundamental defect which inherently results in a complete miscarriage of justice. *Davis v. United States*, 417 U.S. 333, 346 (1974) (quotation marks and citation omitted).

[3] Having reviewed Wesley's direct appeal brief, however, it appears that Wesley did argue to the appellate court that the tax loss included some properly prepared returns. It does not appear that she raised a statute of limitations argument on direct appeal.

4

$ 5,714,659, while the amount of loss for restitution purposes (i.e., the amount of actual loss) was determined to be $ 5,570,945. (*See* Sentencing Tr. at 22). Wesley objected to the loss calculation, which drew heavily upon information provided by Internal Revenue Service ("IRS") Special Agent Christina Coleman. Agent Coleman testified at Wesley's sentencing that the IRS had identified over 1400 fraudulent tax returns prepared or submitted by Wesley. (Sentencing Tr. at 36-37; 46-47). The amount of the refunds claimed by taxpayers on those returns was $5,714,659, and the amount of refunds paid by the IRS was $5,570,945. (Sentencing Tr. at 22). Agent Coleman testified that had the fraudulent returns been properly filed, no refund would have been issued to the taxypayer, and the taxpayer would have ended up owing money to the IRS in some circumstances. (Sentencing Tr. 22-23; 40). Agent Coleman testified that she arrived at the relevant conduct loss total by totaling up the submitted refund amount on each fraudulent return, and that she did not consider the potential amount the taxpayer would have owed the IRS absent the fraud. (*Id.* at 40; 44-45; 46). Accordingly, it does not appear that any lawfully prepared returns were included in Agent Coleman's calculations.

The Court otherwise notes that the table in United States Sentencing Guideline ("U.S.S.G." or "Guidelines") § 2T4.1 provides for an increase in the offense level based upon the amount of tax loss. The table provides that the offense level increases by two points when the loss amount exceeds $2.5 million and increases by another two points when the loss amount exceeds $7.0 million. *See* U.S.S.G. § 2T4.1(J) and (K). Accordingly, Agent Coleman would have had to err by over $3 million in her loss calculation in order for Wesley to obtain relief on the issue of relevant conduct. Wesley has offered no evidence to contradict Agent Coleman's testimony. The Court finds the loss, as it relates to relevant conduct, was properly determined.

5

The Court likewise finds that it properly determined the loss amount as it relates to restitution. The refunds that were filed but not paid out by the IRS were not included in the restitution amount. Agent Coleman testified that many of the returns should not have been filed, and that the appropriate resolution was to disallow the refunds. (Sentencing Tr. at 40). Agent Coleman testified that it would be difficult to determine the amount each taxpayer should have owed the IRS had the returns been properly prepared, and that it would not have been in Wesley's favor to make a specific determination as to how much each taxpayer should have owed on each return. (*Id.* at 40-41). She testified that she erred on Wesley's side in determining a final number for restitution. (*Id*. at 41). Wesley has offered no contradictory evidence, and the Court determines that the restitution amount was properly determined.

Finally, the Court considers Wesley's argument that the monetary total for which she was ordered to pay restitution is above that charged in the indictment. She maintains that the restitution order, therefore, violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *United States v. Booker,* 543 U.S. 220 (2005). *Apprendi* held that any fact, other than that of a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490. In *Booker*, the Court extended the *Apprendi* rule to application of the Federal Sentencing Guidelines. *Booker*, 543 U.S. 220, 756 (2005). However, restitution is not punishment, and *Apprendi* and *Booker* are not applicable to the restitution amount set by the Court. *See, e.g., United States v. Milkiewicz*, 470 F.3d 390, 403-04 (1st Cir. 2006) ("Post-conviction judicial fact-finding to determine [loss] amount 'by no means impos[es] a punishment beyond that authorized by jury-found or admitted facts' or 'beyond' the 'statutory maximum[.]'") (citation omitted);

*United States v. Leahy*, 438 F.3d 328 (3rd Cir. 2006) ("[A] restitution order does not punish a defendant beyond the 'statutory maximum' as that term has evolved in the Supreme Court's Sixth Amendment jurisprudence."); *United States v. Danford*, 435 F.3d 682, 689 (7th Cir. 2006) ("[R]estitution is not a criminal punishment but a civil remedy administered for convenience by courts that have entered criminal convictions."); and *United States v. May*, 413 F.3d 841, 849 (8th Cir. 2005) (finding "persuasive" the view of other circuits that have determined that *Apprendi* and *Booker* do not affect the determination of restitution amounts). Accordingly, the Court finds that Wesley's first ground for relief is without merit.

**Grounds Two, Three, and Four**

Wesley's remaining claims implicate the statute of limitations. In ground two, she asserts that all but one of the charges in the indictment fall outside of the applicable six-year statute of limitations, and that the overt acts listed in the indictment report conduct falling outside the limitations period. In ground three, Wesley argues that trial counsel rendered ineffective assistance in failing to notify the Court of the alleged statute of limitations issues and in failing to have her sentence adjusted to reflect punishment for the one charge that survived the limitations issue. In ground four, Wesley takes issue with the Court's calculation of restitution, arguing that the amount should have been limited to the one offense that survived the statute of limitations.

The Court notes that Wesley did not raise any issue pertaining to the statute of limitations on appeal. Since the issue of the statute of limitations could have been raised on appeal but was not, the Court may not grant relief on any claim relating to the statute of limitations unless Wesley can show cause for failing to raise the issue on direct appeal and actual prejudice from

7

the error, or that failure to consider the claim would result in a miscarriage of justice. *See, e.g., United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992); *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991).

The Court notes that Wesley raises an ineffective assistance of counsel claim in ground three. Specifically, she maintains that counsel was ineffective in failing to object at sentencing to a guideline calculation that considered conduct that Wesley claims was outside of the statute of limitations. Ineffective assistance of counsel claims are constitutional in nature and satisfy the "cause and prejudice" standard, thereby allowing consideration of the claim. *United States v. Bounds*, 943 F.2d 541, 544 (5th Cir. 1991). In order to prevail on a claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test as set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This requires Wesley to show that trial counsel's performance was so deficient that it cannot be said that he was functioning as "counsel" within the meaning of the Sixth Amendment, and that the deficient performance prejudiced her defense. *See id.* at 687; s*ee also Boyle v. Johnson*, 93 F.3d 180, 187 (5th Cir. 1996) (ineffective assistance of counsel claims analyzed under *Strickland* framework). The failure to prove either deficient performance by counsel or actual prejudice as a result of counsel's actions or omissions defeats a claim of ineffective assistance. *See Strickland*, 466 U.S. at 697; *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

In order to make the requisite showing of prejudice, a defendant must show that there is a reasonable probability that, but for counsel's specified errors, the result of the proceeding would have been different. *Glover v. United States*, 531 U.S. 198, 203 (2001) (citation omitted). The *Strickland* Court held that "[a] reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Strickland*, 466 U.S. at 694. Absent an affirmative showing of prejudice, there is no merit to a claim of ineffective assistance of counsel. *See, e.g., Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) ("In the absence of a specific showing of how these alleged errors and omissions were constitutionally deficient, and how they prejudiced [the defendant's] right to a fair trial," there is no merit to an ineffective assistance of counsel claim).

In this case, Wesley was charged in Count 1 with conspiracy to defraud the IRS regarding the payment of false and fraudulent claims, and she was charged in the remaining counts with the willful preparation and presentation of fraudulent tax returns. Each of these charges is governed by a six-year statute of limitations. *See* 26 U.S.C. § 6531(1) and (3). As an initial matter, the Court notes that "[t]he return of a timely indictment tolls the statute of limitations as to the charges alleged therein." *United States v. Schmick*, 904 F.2d 936, 940 (5th Cir. 1990). A superseding indictment filed while the initial indictment is pending is timely unless it broadens or substantially amends the charges made in the original indictment. *Id.* (quotation marks omitted); *United States v. Rankin*, 825 F.Supp. 2d 761, 765 n.2 (S.D. Miss. 2011).

Wesley was convicted of Counts 1, 8, 9, 10, and 11 of a superseding indictment that was issued on August 26, 2010. (*See* ECF no. 128). Counts 8-11 were new to the superseding indictment and pertained specifically to false tax returns that were filed in four successive years on behalf of one taxpayer, Barron Boyd. (*See id.* at 7-8). Mr. Boyd's earliest relevant tax return was filed on January 18, 2006, which is within six years of the date upon which the superseding indictment was filed. (*Id*. at 8). Count 1 was initially set forth in the original indictment, which

9

was filed on March 26, 2009, and it remained unchanged in the superseding indictment. The conspiracy in Count 1 was alleged to have run from January 1, 2003, to April 15, 2004, with acts charged between the dates of January 24, 2003, and February 9, 2004. (*See* ECF no. 1, 1-4). Since at least a portion of the conspiracy was proved at trial to fall on or after March 26, 2003, Count 1 was properly charged within the six-year statute of limitations. *See United States v. Davis*, 533 F.2d 921, 929 (5th Cir. 1976) ("In a conspiracy prosecution for violating § 371 the statute of limitations must be computed from the date of the last overt act of which there is appropriate allegation and proof."). Accordingly, Wesley was properly convicted of the charges within the applicable statute of limitations.

The Court also notes that the Guidelines allow a sentencing court to consider all relevant conduct in issuing its sentence, including all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction. U.S.S.G. § 1B1.3(a)(2). The fact that the jury may have acquitted Wesley on some charges does not prevent the Court from considering conduct underlying the acquitted charges, provided that the conduct has been proved by a preponderance of the evidence. *United States v. Watts*, 519 U.S. 148, 157 (1997); *United States v. Jackson*, 596 F.3d 236, 243 (5th Cir. 2010). Likewise, uncharged but relevant conduct may be used in determining the loss amount. *United States v. Cooks*, 589 F.3d 173, 185 (5th Cir. 2009) (finding that uncharged conduct is "relevant conduct" and may be used in determining loss amount if it is part of the "same course of conduct" or "common scheme" as the offense of conviction). In this case, Agent Coleman gave uncontradicted testimony about the total loss to the Government as a result of Wesley's fraudulent activities, and there was support for the sentence Wesley received. Even if the intended loss was calculated based on some

10

returns that fell outside of the statute of limitations for which Wesley could be prosecuted, "there is no separate statute of limitations beyond which relevant conduct suddenly becomes irrelevant." *United States v. Rhine*, 583 F.3d 878, 886 (5th Cir. 2009).

Additionally, the Court relied upon the PSR to determine the amount of loss for sentencing purposes. The PSR "bears sufficient indicia of reliability to be considered as evidence by the district court, especially when there is no evidence in rebuttal." *United States v. Cothran*, 302 F.3d 279, 286 (5th Cir. 2002) (citation omitted). It is the defendant's burden to show that information in the PSR is "materially untrue, inaccurate, or unreliable." *Id.* Wesley has failed to show that the information contained in PSR as to the amount of loss was incorrect, and the Court properly considered the losses attributable to Wesley's fraudulent conduct.

Because the Court has considered Wesley's claims and found them to be without merit, it also notes that she cannot demonstrate that counsel performed ineffectively with regard to these issues. *See,e.g., Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) (noting that where the issue underlying an ineffectiveness claim is without merit, the ineffective assistance claim fails). Finding no grounds to grant the requested relief, Wesley's § 2255 motion will be denied.

### Certificate of Appealability

Although Wesley has not filed a notice of appeal, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts. A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For claims rejected on their merits, Wesley may obtain a COA by demonstrating "that reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As to claims rejected on procedural grounds, Wesley may obtain a COA by showing that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. The Court finds that Wesley cannot satisfy the *Slack* criteria, and a COA will not issue in this case.

## Conclusion

Wesley is not entitled to relief under 28 U.S.C. § 2255, and her motion to vacate, set aside, or correct sentence (doc. entry no. 254) is **DENIED**. A certificate of appealability from this decision is **DENIED**. The Court will enter final judgment by separate order.

**SO ORDERED**, **THIS** the 27th day of February, 2014.

                                           /s/ Sharion Aycock
                                           **U.S. DISTRICT JUDGE**